UNITED STATES of America

v.

Louis AGNES.

Crim. No. 78–7.

United States District Court,
E. D. Pennsylvania.

July 7, 1978.

Robert N. DeLuca, U. S. Atty., Joel M. Friedman, Donald F. Manno, Special Atty., Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

Robert F. Simone, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendant was indicted and tried for violation of 18 U.S.C. § 922(h), which makes it unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to receive any firearm which has been shipped or transported in interstate or foreign commerce. At the conclusion of the government's case in this non-jury trial defendant moved for a judgment of acquittal. I denied the motion at that time but indicated that I would reconsider defendant's motion after all the evidence was taken.[1] In his motion for judgment of acquittal defendant asserts that he cannot be convicted of this crime for four reasons: (1) there is insufficient evidence that he received the firearm; (2) there is a fatal variance between the evidence produced at trial and the crime alleged in the indictment; (3) there is insufficient evidence of a nexus to interstate commerce; and (4) there could be no violation of § 922(h) under the stipulated facts because the firearm in question travelled in interstate commerce before the effective date of 18 U.S.C. § 922(h).

Before reaching these arguments I must determine what evidence should be considered in judging the four grounds for acquittal. Defendant asserts that only evidence presented in the government's case should be considered. However, it is clear in this Circuit that when the defendant produces evidence in his own behalf after a denial of a motion for acquittal he "waives" his right to object to the denial of the motion. *See, e. g., U. S. v. Calderon*, 348 U.S. 160, 164 n. 1, 75 S.Ct. 186, 99 L.Ed. 202 (1954); *United States v. Trotter*, 529 F.2d 806, 809 (3d Cir. 1976); *United States v. Feldman*, 425 F.2d 688, 692 (3d Cir. 1970). Once such a motion is renewed at the close of the case the court is justified in considering all evidence presented in ruling on the motion.

After defendant made his motion and argument at the close of the government's case I stated, "I therefore deny the defendant's motion and take it under advisement." Although this statement was somewhat ambiguous, my intention was to deny the motion at that time but to notify counsel that I would reconsider it at the close of the case. I conclude that this is the only logical interpretation of my remarks, to which defense counsel did not object or attempt to clarify. Therefore, I will consider all evidence presented in judging defendant's motion.

Most of the facts in the case are not disputed. On October 11, 1977, while executing a search warrant, FBI agents discovered on defendant's person a Mauser .25 caliber pistol, serial number 92561, which was loaded and fully operative. He was arrested immediately. Both sides stipulated that the gun was not manufactured in Pennsylvania. Its last known lawful possession was in 1972 and it appears that the last known interstate movement of the firearm occurred at some time before 1967. Defendant was convicted on November 8, 1972, of violating 18 U.S.C. § 472, a crime punishable by imprisonment for a term in excess of one year.

I must rely on circumstantial evidence to determine when defendant received this firearm. At the time of his arrest defendant stated that the only reason he had the gun on his person was to protect himself from customers who frequented the store in which he worked. This store began operation approximately six months before his arrest and during that time period defendant had several confrontations with juvenile customers. The owner of the store, Robert Rago, testified that he saw the firearm in a drawer in the store approximately one week before the arrest. In addition, Mr. Rago testified that defendant was responsible for protecting the business and that defendant was authorized by Rago to carry a firearm as part of that duty. Final-

---

1. See text at p. 2, *infra*.

ly, the testimony of the defendant's son, Louis Agnes, Jr., although extremely confusing, established that the earliest date the witness remembered seeing the weapon in his father's possession was August, 1976. This evidence convinces me beyond a reasonable doubt that the defendant received the firearm not earlier than August, 1976. With these facts established I will now address defendant's legal arguments.

## I. RECEIPT:

█ Defendant argues that the evidence of possession is insufficient to prove that the defendant received the firearm, a necessary element under § 922(h). I disagree. Several courts have concluded, and common sense dictates, that a person in possession of a firearm must have received it sometime before that date unless that individual is shown to have manufactured the gun. *United States v. Haley,* 500 F.2d 302, 304 (8th Cir. 1974); *United States v. Craven,* 478 F.2d 1329, 1337 (6th Cir. 1973). Since the defendant did not manufacture this firearm he must have received it, *i. e.,* first come into possession of it, before October 11, 1977. This satisfies the statutory requirement of receipt.

## II. VARIANCE:

█ Defendant was indicted on January 4, 1978, and was charged with receiving the firearm "on or about the 11th day of October, 1977." Defendant argues that there is insufficient evidence to conclude when the defendant received the firearm in question and that the government's evidence substantially varies from that alleged in the indictment. He asserts that this time variance is fatal. I disagree.

In *United States v. Somers,* 496 F.2d 723 (3d Cir. 1974), the Third Circuit established the criteria for analyzing whether variances from the indictment constitute reversible error. In particular, the court addressed the problem of time variances in which the indictment alleges an incident occurring "on

or about" a specific date. It concluded that if the variance constitutes a modification of the elements of the crime charged it is *per se* reversible error. However, if time is not an essential element of the offense and the proof of the acts charged occur on any date within the statute of limitations and before the return date of the indictment, the time variance is not a modification of the elements of the crime charged. In this circumstance no reversible error has occurred unless the defendant can show that the time variance prejudiced his defense.

Applying this two-part test to this case I conclude that there is no fatal variance. First, time of receipt is not an essential element of 18 U.S.C. § 922(h). In order to establish a *per se* fatal variance, defendant would have to show that the receipt occurred before January 4, 1973, or after January 4, 1978.[2] Since I find beyond a reasonable doubt that defendant received the firearm within fourteen months of the arrest, no *per se* fatal variance has occurred.

█ In order for there to be a fatal variance, therefore, defendant must establish that he has been prejudiced by this time variance. Under *United States v. Somers,* 496 F.2d at 746, two issues must be considered in ascertaining prejudice: (1) whether the defendant may be prosecuted a second time for the same offense due to the variance; and (2) whether defendant was so surprised by the proof adduced at trial that he was unable to prepare his defense adequately. I find nothing in the record or in defendant's brief to suggest that the time variance here will cause double jeopardy problems for him. As to the issue of surprise, I find that the defense presented at trial demonstrates that defendant was prepared adequately to address the issue of when he received the firearm. Defendant called two witnesses to present evidence on this specific question. For these reasons I conclude that the time variance did not prejudice defendant and thus there was no fatal variance.

---

**2.** The appropriate statute of limitations for this crime is five years. 18 U.S.C. § 3282. Since the indictment was returned on January 4,

1978, the statute of limitations period began on January 4, 1973.

## III. NEXUS TO INTERSTATE COMMERCE:

■ Defendant asserts that the interstate transportation of this firearm occurred before 1967 and is far removed from the date when defendant received the firearm. He maintains that the nexus between defendant's conduct and interstate commerce is so attenuated as to fail to meet the requirements of § 922(h). In support of this argument defendant cites *United States v. Craven,* 478 F.2d 1329, 1337 (6th Cir. 1973), which suggested that the statute requires that interstate transportation of the firearm be in close time proximity to the receipt of the firearm by defendant. Recent Supreme Court decisions on this subject reject this requirement, however, and hold that as long as the firearm has travelled previously in interstate commerce the statutory requirement is met.

In *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), the Court analyzed the interstate commerce element of § 922(h). This statutory provision makes it a crime to receive any firearm "which *has been shipped* or *transported* in interstate or foreign commerce." In *Barrett* the defendant bought the firearm in question in an intrastate sale which was not connected to the interstate transaction which had occurred a few months before. The Court concluded that § 922(h) covered intrastate receipt of a firearm which previously had moved in interstate commerce. While the facts of the case were such that the interstate transaction was in close proximity to the receipt, the Court placed no time requirement on when the interstate commerce must occur.

Whatever doubt as to the nexus requirement might have remained after *Barrett* was resolved by *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), in which the Court analyzed the interstate commerce element of 18 U.S.C. App. § 1202(a)(1), a provision analogous to § 922(h). Although the language of § 1202 is not identical to that of § 922(h), the Court in *Scarborough* placed the same interpretation on the interstate commerce

nexus requirement as it did in *Barrett.* It concluded that as long as the firearm previously had travelled in interstate commerce the interstate nexus was satisfied. In *Scarborough,* however, the interstate commerce occurred several years before the date the firearms were found in possession of the defendant. *Scarborough v. United States,* 431 U.S. at 565 n. 2, 97 S.Ct. 1963. It is clear from that decision that when the firearm travels in interstate commerce is not material. Since the firearm in this case has travelled in interstate commerce, the statutory requirement has been satisfied.

## IV. INTERSTATE COMMERCE BEFORE THE PASSAGE OF SECTION 922 (h):

■ Defendant asserts that he cannot be convicted because the interstate transportation occurred before the effective date of the statute, December 16, 1968. Section 922(h) does not require that the interstate transportation occur after its effective date. Rather, the language of the statute suggests by using the present perfect tense ("has been shipped or transported") that Congress intended § 922(h) to apply to interstate commerce which has occurred at some indefinite time in the past. The Court's interpretation of the statute in *Barrett v. United States,* 423 U.S. at 216–17, 96 S.Ct. 498, supports this conclusion. I can perceive no reason why this completed act of interstate transportation should have to occur after the effective date of the statute. The intent of Congress was not only to restrict the interstate movement of firearms by § 922(h); its broader concern was "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States,* 423 U.S. at 218, 96 S.Ct. at 502. Courts uniformly have rejected defendant's argument when raised in cases involving 18 U.S.C. App. § 1202. *See United States v. Three Winchester 30–30 Caliber Lever Action Carbines,* 504 F.2d 1288, 1291 n. 7 (7th Cir. 1974); *United States v. Day,* 476 F.2d 562, 569 (6th Cir. 1973); *United States v. Oclit,* 343 F. Supp. 447, 449 (D.Hawaii 1972). I agree with these decisions and believe

## 1260

their rationale applies with equal force to § 922(h). Thus, as long as the firearm has travelled in interstate commerce at any time before the defendant receives it, the statutory requirement is met.